Tilghman C. J.
This is an action for money had and received, brought by Hammon and Daniel, merchants, of Pe~ tersburg, Virginia,against William Cottle. The plaintiffs, about latter end of September, 1811, shipped 58 hogsheads of tobacco, by the ship Acastus, bound to Tonningen, consignec^t f°r sAe and return, to the defendant, who was master of the said ship. The Acastus was captured and carried into France ; and, after the lapse of a considerable time, restored t0 t^e defendant, with her cargo. . . the defendant wrote to the plaintiffs from Pans, informing them that their tobacco had been sold to the French government to be paid for in three instalments, the first and second 7 * , . t of which had been already received, and the third was expected to be received in a few days; that the money was On the 23d August, 1813, lodged with Mr. Henry Preble, merchant of Paris, and should be remitted as soon as good bills could be procured, unless peace took place between Great Britain and the United States, in which case it should be invested in the produce of France, and shipped home in the Acastus. On the 8th November, 1813, the defendant wrote the plaintiffs a second letter from Paris, informing them that he had received the third instalment from the French government, but not having been able to get good bills at a rate that he thought it prudent to purchase at, and being about to leave France on a short cruise, he had deposited their funds with Mr. Preble, ■with orders to remit to the plaiiitiffs as soon as he could get *291 good bills, at 4 fr. -//g- per dollar ; but if be could bills at that rate, to keep the money until he receiv^Mfee plaintiffs’ orders, allowing interest for it during the tiffls'it should remain his hands. With this letter there was%ft account current, shewing the balance due to the plaintiffs. On the 7th November, 1813, (the day before the second letter to the plaintiffs) the defendant wrote to Henry Preble, and gave him the instructions mentioned in his letter the day after to the plaintiffs, viz. to remit to the plaintiffs the balance due to them, (which was stated to he 17,331 fr. 43 centimes) when good bills could be got at 4 fr. 50 centimes per dollar j but if bills could not be procured at that rate, to keep the money until he heard from the plaintiffs, allowing interest on it while it remained in his hands. In the same letter the defendant acknowledged the receipt of a letter from Preble, with his account current, shewing that he had received the money deposited by the defendant. In 1814, the plaintiffs drew bills on Preble, which were protested. The cause assigned for non-payment was, that the plaintiffs’ signature was not known, and that the defendant had given no orders to pay to the plaintiffs. The true reason, however, of the nonpayment of these bills was, that Preble’s affairs were embarrassed, as he afterwards acknowledged in his letter to the defendant of the 1st December, 1815. The money was lost by the insolvency of Preble ; and on the trial of this cause, two questions were made. 1st. Whether the defendant had exercised reasonable prudence in placing the plaintiffs’ funds in the hands of Preble, who was not a regular merchant, and who was subject to great fluctuations of fortune from his adventures in privateering. On this point a good deal of evidence was given, and it was submitted to the jury with directions to find for the plaintiffs in case they should be of opinion that the character of Preble did not justify the deposit made by the defendant. The jury having found for the defendant, and the Judge who tried the cause not being dissatisfied with the verdict, we see nothing, in the evidence disclosed to us, to warrant the order of a new trial on the ground of the verdict being against the evidence.
The second point was reserved as matter of law for the consideration of the Court in Bank. It was this. Supposing that the defendant had authority to deposit the money of the plaintiffs in the hands of Preble, and that he acted with *292 .^s^Skíi* prudence in making the deposit, was it not his duty tojfBpiish the plaintiffs with some document proving that Pnmlp had received the money, and was accountable to the plaintfis ; and for default of furnishing such document, does not rema^n chargeable himself? The plaintiffs contend, that if they had desired to institute legal proceedings against Preble, they were destitute of evidence, and it is possible that for want of such evidence, the debt may have been lost. In answer to this, it is to be observed that there is no evidence' from which it can be inferred that the plaintiffs sustained any loss by the want of the document which they now require. They were advised by the defendant that their money was in the hands of Preble, and that if it was not remitted they might draw for it. They did draw for it—but Preble, who ought to have honoured their bills, refused payment. This was not the fault of the defendant. He had appropriated the money in Preble's hands to the use of the plaintiffs, so that it was the property of the plaintiffs, and they had a right to draw for it. It was too late to take legal measures against Preble after he refused the bills—his insolvency would have rendered such measures fruitless. The defendant did hold a document sufficient to support an action in the plaintiffs’ name, against Preble, viz. Preble’s account current, acknowledging the balance in his hands, and a copy of his own letter to Preble, making an appropriation of the balance due to the plaintiffs ; so that there would have been no want of evidence if the plaintiffs had required it. I will not say what the law would have been, had the plaintiffs really suffered damage by not being possessed of the document with which they now complain that they were not furnished in due time. But that is not the case. There is no evidence of loss from any such cause. As the case stands upon the evidence, the defendant, being lawfully authorised, deposited the plaintiffs’ money with Preble, giving him notice that it was the money of the plaintiffs, and to be paid to their order, and immediately advised the plaintiffs of what he had done. The plaintiffs drew for their money, and Preble, contrary to good faith, refused their bills, being embarrassed at the time, and soon afterwards openly insolvent. The loss which the plaintiffs have sustained was in consequence of this insolvency, which no document could have prevented. Tinder these circumstances, I am of opinion that the defend *293 ant was discharged by the payment of the plaintiffs’ money to Preble, and consequently the verdict in his favour was right.
Sergeant, for the plaintiffs.
Chauncey, for the defendant.
New trial refused, and judgment for the defendant on the verdict. s