# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT, MARCH TERM, 1833.

[PHILADELPHIA, MARCH 14, 1833.]

## HARVEY *against* TURNER and CO.

### IN ERROR.

Where an agent sells the goods of his principal on credit, taking a note for the price, gives notice of the sale to his principal, and credits him in account with the amount of it, but omits to give notice of the non-payment of the note at maturity, the agent becomes responsible for the whole amount of the debt, and it is not necessary, to enable the principal to recover, that he should prove he has sustained any damage. The omission to give reasonable notice, makes the agent an insurer of the solvency of the purchaser.

WRIT of error to the District Court for the City and County of *Philadelphia*.

The defendants in error were plaintiffs below, in an action of *indebitatus assumpsit* brought against the plaintiff in error to recover back the sum of nine hundred and forty-three dollars and two cents, as money lent and advanced by the plaintiffs below to the defendant below. The main question in the cause was, which of them should bear the loss of that sum, which was the price of twenty-six bales of cotton sold by the plaintiffs on account of the defendant.

The plaintiff's were commission merchants in *Philadelphia*, and the defendant a merchant residing in *Newbern*, *North Carolina*. He was in the habit of shipping to the plaintiffs various articles of produce, such as rosin, molasses, cotton, &c. for the purpose of making sales and returns, and the plaintiffs occasionally shipped to him. In the month of *September*, 1822, the defendant shipped to the plaintiffs twenty-six bales of cotton for sale, and the plaintiffs, on the 13th of *November* following, sold them to one *John Hastings*, on four months

(Harvey *v.* Turner and Co.)

credit, taking for them the note of *Hastings* and wife. *Hastings* subsequently proved to be insolvent; the note was not paid at maturity, nor afterwards, and the amount of it constituted the sum in controversy.

It appeared in evidence that the plaintiffs carried on an occasional correspondence with the defendant, until *September*, 1823. They advised him of the sale on the 15th of *November*, 1822, and stated it in an account-current dated 31st of *December*, 1822, which was forwarded to him. But they did not advise him of the non-payment of the note until about the 26th of *September*, 1823, when the defendant being in *Philadelphia*, they handed him an account-current of that date, in which they charged him with the amount of the note, having credited him with it in the account-current previously rendered of the 31st *December*, 1822. It appeared in evidence also, that the plaintiffs were in the habit of rendering accounts-current to the defendant at the end of each year, or at the visit which the defendant annually made to *Philadelphia.* From the correspondence between the parties it was apparent, that the defendant had intended to be in *Philadelphia* in the year 1823 several months before he actually arrived. He had written to that effect, and was expected by the plaintiffs. No account-current had been rendered subsequent to the dishonour of the note prior to the arrival of *Harvey* in *Philadelphia.* The plaintiffs were largely in advance to the defendant, independently of the note when it arrived at maturity, and continued so until the 13th of *October*, 1823, when the sum of one thousand two hundred and sixty-two dollars and seventy-two cents, was paid to them, leaving unpaid and subject to controversy, nine hundred and forty-three dollars and two cents, the amount of the sale to *Hastings.*

It further appeared, that when the note fell due, the plaintiff refused to renew it. They saw *Hastings* in the city, and threatened suit. He promised to give them security. They pressed him for payment by letters written both by themselves and by their counsel, and on the 8th of *August*, 1823, obtained his bond and warrant to confess judgment in favour of the defendant as obligee, and on the same day entered up judgment against him in *Delaware* County, in which he resided; but in consequence of his incumbrances the judgment proved unavailable. This bond was tendered to the defendant in *September*, 1823, and in the month of *November* following this suit was commenced.

The defendant contended that *Hastings* was not worthy of credit: That the plaintiffs did not make proper inquiries as to his standing, and insisted on other matters of fact of which there was evidence, which went to the jury. In point of law he contended

1. That it was the duty of the plaintiffs as agents to apprise the defendant, their principal, of the non-payment of *Hastings'* note within a reasonable time, and that if they did not do so they must sustain the loss incurred.

(Harvey *v.* Turner and Co.)

2. That it was the duty of the plaintiffs to institute legal proceedings against *Hastings,* in a reasonable time, and not having done so, the loss must fall upon them.

In delivering his charge to the jury, BARNES, President, after stating the evidence and giving his views of it, left it to the jury to determine in the first place, whether *Hastings,* at the time the plaintiffs sold to him, was entitled to credit, and if he was not, whether in the next place, the plaintiffs being ignorant of that fact, used reasonable diligence and care in inquiring into his credit. He then stated to them, that if their opinion should be with the plaintiffs on this part of the case, then another question arose for their consideration, namely, whether the plaintiffs were bound to give notice to the defendant of the non-payment of the note within a reasonable time after it was protested, and if they had failed to do so, whether they had not assumed the debt. He instructed the jury, that in point of law the plaintiffs were bound by the implied contract of their agency to give such notice. He added, that this rule would be of easy and ready application if the exceptions to it were matter of law and not questions of fact, but the principle of the decisions of our Supreme Court was, that the jury are to determine whether the defendant has suffered damage from want of notice : That if he has sustained no damage the plaintiffs might recover notwithstanding their default : That it did not follow because nothing could have been recovered from *Hastings* at law, that the defendant had suffered no damage : That the jury were to determine whether any thing could have been obtained in any way, from his wife, from his friends, by compromise, or more broadly still, whether the defendant had been in any way damnified by the want of notice : That if the defendant was in precisely the same situation without notice, that he would have been in if he had received it, he had not been injured by the plaintiffs' neglect and consequently the default of the plaintiffs in this particular was no defence to the action : That if, as had been contended on the part of the defendant, the plaintiffs were bound in case they omitted to give notice to pursue the course of the law against *Hastings,* still the question would be whether the defendant had suffered loss : That if nothing could have been recovered by a suit at law, a suit was unnecessary, and if any thing could have been recovered, then the defendant had been damnified by not having received reasonable notice of the non-payment of the note : That if the plaintiffs led the defendant to believe that the note was paid at maturity, and the defendant drew for that specific sum, or thereabouts, distinctly in consequence of a belief so produced, and the plaintiffs accepted the draught knowing that it was so drawn, then the plaintiffs had assumed the debt due from *Hastings* and could not recover back the money.

The counsel for the defendant excepted to the charge, and the jury having found a verdict in favour of the plaintiffs, the present writ of error was taken out

(Harvey *v.* Turner and Co.)

*T. Sergeant* and *Chauncey* for the plaintiffs in error, argued, that the court below had erred in laying down for the government of the jury a principle not sanctioned by authority, and dangerous in its character, as respects the relation of principal and agent, because it is calculated to deprive the principal of the power of defending himself against the acts of his agent. That principle was, that a jury could only give such damages as the principal could prove he had actually sustained. It is true that the general rule is, that an agent is responsible only for the loss he has actually occasioned, and that it lies on him who claims damages, to shew the injury he has sustained. But there are cases in which a more rigid rule is applied, particularly for the benefit of commerce, and to ensure the fidelity of those who must necessarily be employed to a great extent in the business of others. If the law were otherwise, the principal would be entirely at the mercy of the agent, who would have it in his power to cover negligence and fraud. That rule of law which calls for the performance of a known and admitted duty cannot be called hard or unjust. He who is visited with a penalty which is the consequence of his own act or omission, has no cause of complaint. This rule is in accordance with the principles which regulate agency, and with those of commercial law in general. The principal commits every thing to the agent, and therefore the law holds the latter to a faithful performance of the trust. He must pursue his instructions, and if he departs from them the principal may either affirm or disaffirm his acts. It is an established rule, that where so important an event has occured as the insolvency of a person to whom the agent has sold the goods of his principal, notice shall be given within a reasonable time. This rule is not difficult in its application. It may be necessary to leave to the jury the determination of the question as to what amounts to reasonable notice, but this is a matter well understood and perfectly familiar. In the case under consideration, the agents were in correspondence with their principal from the time of the maturity and non-payment of the note of the vendee, until the arrival of the principal in *Philadelphia*, a period of more than six months, and yet not a word is said about a matter so important to his interests. If notice had been given and proper measures had been taken, the whole or the greater part of the debt might perhaps have been secured. But the conduct of the agents was such as to lull the principal into security and make him believe that the debt was paid. Credit for the amount was given in account, the principal drew upon it, and nothing occurred for a long time to countervail the credit thus given. By this conduct the agents assumed the debt as their own, and rendered themselves responsible to their principal for the whole amount. There can be no objection to the rule contended for on behalf of the plaintiff in error, on the ground of policy, for it was always the policy of the law, to keep agents within bounds and make them attend to their duty. For the benefit of trade, it is necessary to hold commercial agents by stricter rules than those by

(Harvey *v.* Turner and Co.)

which other agents are governed.  The principal cannot follow the course of his agent, or know what he is doing, except from information derived from the agent himself.  It is impossible for him to shew that by active measures more could have been obtained.  The proof therefore ought not to be thrown on him.  It would be to reverse settled principles, to decide that the agent is not bound to give notice of all occurrences important to the interests of his principal, and the principal can recover nothing but damages for the loss he can prove he has sustained by tracing the agent through all his windings. *Malyne* (*Con. et Lex Mer.* 82) lays it down, that notice of sale is necessary, and surely it is of much more importance that notice should be given of the insolvency of the vendee.   The rule for which the plaintiff in error insists, is analogous to that which governs many other cases arising under the commercial law.   It is the law of bills of exchange and promissory notes.   An endorsement is an engagement of guaranty, and if notice be not given within a reasonable time of the occurrence of the event on which the responsibility of the endorser is to arise, it is gone.   This is a severe penalty, but if it were left to a jury to determine whether damage has accrued from want of notice, there would be neither certainty nor safety in the law.   The law imposes the penalty on neglect of duty and presumes that injury has been the consequence of it.   Formerly it was held that damage from the laches of the holder must be proved, but it is now settled otherwise.   A case very seldom occurs in which loss is actually sustained in consequence of want of notice to the endorser, and yet the law strictly requires it.   The rule as to abandonment for a total loss is of a similar character.  If the ensured means to abandon and claim for a total loss he must give early notice of his intention.   All that is asked for on the present occasion is, that where the agent has treated the debt as his own, and credited his principal with the amount of it, he shall give reasonable notice of a change of intention.   It is not only for the benefit of the principal that such rules prevail.   The agent also has the benefit of them.   If an account-current be sent to the principal and not objected to within a reasonable time, it cannot afterwards be objected to.   So if the agent exceeds his authority, and informs his principal who makes no objection, he is considered as having adopted the act of the agent.   Here the agent gives notice that the credit will become absolute in a given time gives no notice of the insolvency of the vendee and asks no allowance on account of his insolvency.   The law regards him as having taken the solvency upon himself.   They cited *Paley on Agency,* 5.    *Clark* v. *Moody,* 17 *Mass. R.* 145.    *Chitty on Bills,* 237.    *Jameson* v. *Swainston,* 2 *Camp.* 546, *note.*

*Scott,* for the defendants in error, said, that the court below had charged directly in favour of the plaintiff in error, as to the position that it was the duty of the agent to give notice to the principal of the insolvency of the vendee, but they added, that if no injury ensued

(Harvey *v.* Turner and Co.)

from such neglect of duty, no damages could be recovered, which implied that if any injury had been the consequence, damages might be recovered. No authority has been produced to shew the existence of such a rule as has been contended for by the counsel for the plaintiff in error, that where a factor neglects to give notice of the insolvency of the purchaser of his principal's goods, he is to be amerced in the whole amount of the debt. *Paley* (*on Agency*, 37,) lays it down as a question depending on the circumstances of each case, whether injury has been sustained by the principal in consequence of the culpable neglect of the agent. *Hammon* v. *Cottle*, 6 *Serg. & Rawle*, 290, sustains the principle that the agent is not responsible for an omission of duty, where the loss would have been the same if that duty had been performed; and *Gibbs* v. *Cannon*, 9 *Serg. & Rawle*, 199, decides the analogous point, that on a guaranty of a promissory note, drawn and endorsed by others, it is not necessary to give notice of non-payment to the guarantor where the drawer and endorser are insolvent when the note becomes due, their insolvency being *prima facie* evidence that the guarantor was not prejudiced by the want of notice. He also cited *Child* v. *Corpe*, 1 *Payne, C. C. R.* 289. *Murray* v. *King*, 5 *Barn. & Ald.* 165. *Co. Litt.* 198, a.

The opinion of the court was delivered by

ROGERS, J.—This was an action of *indebitatus assumpsit*, brought to recover certain advances made by the plaintiffs to the defendant under the following circumstances. The plaintiffs, who reside in the city of *Philadelphia*, were the factors or consignees of the defendant, who resides in *North Carolina*, and by orders of the defendant, on the 13th of *November*, 1822, sold twenty-six bags of cotton, to a certain *John Hastings* at a credit of four months. The 17th of *November* the plaintiffs advised the defendant of the sale, and on the 31st of *December* transmitted their account to the defendant, debiting him with their advances, and crediting him with the amount of sales. The whole amount was paid to the defendant. The debt due from *Hastings* was ascertained to be bad, on the 15th of *March* following, at which time *Hastings's* note was protested for non-payment. Although several letters passed between the parties, no claim is made on account of non-payment, nor is there advice given or notice of the fact of protest, for upwards of six months. The defendant alleges that the factors were guilty of negligence in making sale of the cotton; that they were negligent in giving notice of the insolvency of *Hastings*, and also, in their endeavours to obtain payment after the sale.

It is admitted that the first point was properly left by the court as a fact for the decision of the jury. But the defendant complains of the charge of the court which in effect was, that the defendant shall repay the money advanced unless the defendant can show that he has suffered damage by the negligence of the plaintiffs. By the charge of the court, the *onus* is thrown upon the principal, whereas

the defendant contends, that the factors in giving credit, and neglecting to give notice of the non-payment of the note, assumed the debt to themselves. It is a rule of law which does not admit of dispute, that an agent is bound to keep his principal informed of all material occurrences in the agency. If he fails to do so, it is negligence and a palpable violation of duty for which the factor is clearly liable to suit. It was then, the duty of the plaintiffs, to inform the defendant in a reasonable time, and particularly after having credited him in account, of the non-payment of the note. For this the defendant had a right of action, but, according to the charge, he could not recover even nominal damages, unless he could make it appear, that he had sustained some damage by the want of notice. We cannot accede to this view of the case, for a strict adherence to the rule, is in our opinion necessary to insure a faithful performance of the trust. If a factor sells, and credits the principal with the amount of sales, of which he advises his principal, and fails within a reasonable time to give notice that the debt is bad, he becomes an insurer for the whole amount. And this rule is required by a due regard for the security of the principal, for otherwise, such is the power necessarily intrusted to an agent, that he may be guilty of any degree of negligence or of fraud with impunity, unless the principal is able (which is frequently impracticable) to prove special damage, and the extent of it. A merchant in *Philadelphia,* makes a shipment to his factor in *London.* The factor advises him of the sale of the goods at a credit of three or six months, and at the same time credits him with the amount of sales, in his account-current. The factor neglects to inform him of the non-payment of the note at maturity. Surely he has a right to conclude that the bills were paid when due. He acts on this natural supposition; carries on his business as usual; draws bills on the faith of the funds which he fancies he has in the hands of his factor in *London,* and is afterwards informed at the end of six or twelve months (for there is no limit) that he has been under an entire mistake, that although he, the factor, neglected to inform him of it, yet the vendees of the goods were insolvent, and not one cent of the amount has been received. If this be allowed it is obviously a power which may be used either negligently or by design, to the utter destruction of the principal. His whole operations may be destroyed by the failure of the agent to perform an admitted duty, in a manner which it may be difficult if not impossible to show to a court and jury. It is a beneficial principle, which visits such neglect with a strict penalty. Time is of consequence to the commercial world, and it is important to them to be regularly and early advised, of all material circumstances in relation to business entrusted to foreign factors and agents. Nor does the rule impose any unnecessary hardship. It calls merely for the strict performance of a well known and acknowledged duty. A party who negligently or wilfully omits to do that which the law requires, and with which it is so easy to comply, has no right to complain. There was no other rational mode of account-

(Harvey *v.* Turner and Co.)

ing for the silence of the plaintiffs, but on the supposition that the money had been paid, or that the agent had assumed the responsibility on himself. *Harvey* had a right to believe, and to act under the belief,. that *Hastings's* note had been paid, or that such arrangements had been made, as to assure the payment of the debt. In most cases of agencies, it is true, that the measure of damages is the injury which the principal can show he has sustained, and this has been abundantly shown by the cases cited in the argument. But there are cases, of which we conceive this to be one, where it has been found wise, and indeed necessary, in the due transaction of commercial business, to establish rules somewhat arbitrary in their nature, and partaking in some degree of strictness and severity in their operation. Some of these provide for the benefit of the agent, others for the security of the principal. If an agent forward his accounts to his principal, who does not in a reasonable time object to them, he thereby consents, and is bound by them. If he transcends his authority, and the principal fails, within a reasonable time after knowledge, to disaffirm the transaction, he ratifies the act of the agent. If a principal directs his agent to make insurance, and he omits to do so, the agent becomes the insurer. When there is an abandonment the insurer pays for a total loss. To make a drawer liable on a bill of exchange, or promissory note, it is requisite to give him due and seasonable notice of their non-acceptance or non-payment.

These are acknowledged principles of commercial law, for which it is needless to cite authority. So in *Malyne*, 82, it is said, " If a factor do sell unto a man certain goods of another man's account, either by itself, or among other parcels, and this factor giving not advice unto the owner or proprietary of the sale of the said goods, but afterwards (having had more dealing with that man in selling of goods and receiving of moneys) this man becometh insolvent ; the factor is to make good that debt for the said goods so sold, because he gave no advice to the owner of the sale of the said goods, at convenient time, even as if he had sold those goods unto a man contrary to the commission given unto the man; for the sale of factorage binds him hereunto." Further, it has been decided, that after a loss has happened, an agent is bound to give his principal the earliest notice of the insolvency of the underwriters, with whom he has effected policies of insurance on behalf of his principal, in order that the latter may enforce his claim, and take such steps as he may think proper for his own security. A failure to do so makes the agent liable for the whole amount of the insurance. *Jameson* v. *Swainston*, 2 *Camp.* 546, n. In many of their circumstances, the cases are precisely alike, and many of the remarks of MANSFIELD, C. J. are strictly applicable here. As in *Jameson* v. *Swainston*, we are of the opinion, that after so great a lapse of time, between the time of ascertaining the insolvency of *Hastings*, and rendering the last account, the factors, as between themselves and the principal, must be presumed either to have received actual payment of the note, or

(Harvey *v.* Turner and Co.)

to have settled with him in account.   For the purpose of recovering from the defendant, the plaintiffs should, in a reasonable time after the protest of the note, have apprised him of the inability of *Hastings* to pay, whom he was naturally led to believe by the plaintiffs, had settled with the factors.   Their silence deprived him of all opportunity through the instrumentality of others, or by himself, of endeavouring to obtain payment of the note.   The silence of the factors is an answer to their demand against the principal, and they must look for indemnity to *Hastings*, whom they have trusted.   The steps afterwards taken to recover the money, it is unnecessary to examine, for they cannot avail the plaintiffs, inasmuch as they have neglected to give notice of a fact so material for the security of the principal. It may be proper further to state, that I have examined the testimony with care, and cannot discover that the defendant at any time affirmed the conduct of the plaintiffs.

HUSTON, J.—This case presents a single point.   *Harvey,* who lived in *North Carolina,* sent cotton, rosin, &c. to *Turner & Co.,* and drew on them for the price, or received merchandize.   About once a year *Harvey* came to this city, and a settlement of the previous year took place.

In the autumn of 1822, he sent some cotton to *Turner & Co.,* who sold it to *J. Hastings* at four months, and took his note to *J. Harvey,* and informed *Harvey* of this.

Before the note fell due, *J. Hastings* was unable to pay.   *Turner & Co.* pressed him much ; obtained a mortgage on his property and his wife's estate, and then a bond and warrant to confess judgment, and entered judgment in *Delaware* county, where *Hastings* lived.

*Harvey* came to this place in *August* or *September,* 1823, and received an account-current from *Turner & Co.,* by which he was indebted to them about one thousand dollars.   To this, for some time, he made no objection.   In it he had no credit for the amount of *Hastings's* bond and judgment, which, as well as the previous note, were in the name of *J. Harvey.*   After some time, *Turner & Co.* brought suit.   The defence was, that from their conduct they were liable to *J. Harvey* for the price of the cotton sold to *Hastings.*

The judge left it to the jury to ascertain whether, as *Hastings* was unknown to *Turner & Co.* they made the proper inquiries, and received such answers as to his character and standing, as justified them in selling to him on credit, and the jury found for the plaintiffs on this point.   There was an allegation of negligence against the plaintiffs, in not informing *Harvey* that *Hastings's* note was not paid at maturity, and that he was likely to fail; or, in fact, was hopelessly insolvent.   And the court told the jury, that if from this neglect of information *Harvey* supposed the note was paid at maturity, and on that supposition drew for the amount, or thereabouts, distinctly on this supposition, and the plaintiffs accepted the draught, knowing it

was so drawn, they made the debt their own, and could not recover. The jury on this point also found for the plaintiffs.

The court also told the jury, that it was the duty of the plaintiffs to inform *Harvey* promptly, that the note was not paid at maturity, and was in danger of being lost, and for not giving such information the plaintiffs might be liable.   And further, that it was the duty of the plaintiffs to commence suit against *Hastings* if the note was not paid, and no orders were received from *Harvey,* and for not doing this, the plaintiffs might be liable; but that if the jury found from the evidence, that *Harvey* sustained no loss from want of notice, or from no suit being commenced (as a mortgage and judgment were obtained, in less time than they would have been had by adverse suit), that the plaintiffs were not liable.   The court put it strongly to the jury, that if *Harvey* by coming on could have used any means not resorted to by *Turner & Co.,* could, from *Hastings* or his friends, by suit or compromise, have recovered the debt or part of it, in short, if *Harvey* was in any way damnified, by want of notice, the plaintiffs were liable; but if, from the evidence, every thing was done by *Turner & Co.* which could have been done, if *Harvey* is as well off as he could have been if he had received notice, then he has not been injured by want of notice, and must bear the loss.   Here the jury found for the plaintiffs, and the only error assigned is, that the court erred on this last point, and ought to have instructed the jury, that for neglecting to give notice of non-payment of the note, *Turner & Co.* were absolutely bound to make it good to *Harvey.* Although this was the only point which arose in this cause, in which error is assigned, yet much was said on the other points; and perhaps if on those points the jury had found differently, it would have been as satisfactory to the judge who tried the cause; but as he did not grant a new trial, we cannot legally even take that matter into consideration.   The counsel for the plaintiffs have not cited any authority to show that the judge charged contrary to law.   For although an old writer, *Malyne,* was cited to prove that a factor or agent ought to keep his principal informed of the state of his business, yet neither that author, nor any other cited, or which I have seen, states the broad position, that neglect to write or give information of every occurrence, of itself and without other proof, will make a factor liable in every case, and to any amount.   The case cited from 17 *Mass. Rep.* 183, only proves, that omitting to write, together with other circumstances, may make a factor liable.   There, the whole of the circumstances were left to the jury.   *Paley* in his *Treatise on Agency,* has said, in more than one place, that an agent ought to apprise his principal of the state of his business, and of any important occurrence ; but he also states, that to render an agent responsible for loss or damage, "it must be a real, and not a supposed or probable injury merely ; and therefore an agent is not liable for the neglect of an act, expressly directed, if the act when performed would not have entitled his employer to any legal benefit, but only

(Harvey *v.* Turner and Co.)

have conferred a probability of advantage.  *Paley*, 8.   And again, page 37 : " It is of consequence to an agent, in consulting his own indemnity, to apprise his principals with convenient expedition, of all material acts done, or contracts concluded by him.   It must in general be a question to be decided according to the particular circumstances of each case, whether the culpable delay of the agent in this respect has occasioned injury to the principal."

It was contended here, however, that by analogy to other cases, the agent ought to be liable ; and one of these cases was, that a factor who was ordered to insure, and did not, was liable as insurer.   In the first place, the position is too broadly stated.   It is only in particular circumstances and situations, that an agent is so liable.   *French* v. *Reed et al.* 6 *Binn.* 308.   *Paley*, 18, 20, and following pages.   And an agent is not liable at all events, but may use any defence which an insurer could ; for if nothing could have been recovered on the policy, no damage has been sustained by default of the agent.   The plaintiff must prove the amount of his interest and the loss, and the defendant may avail himself of a deviation in the voyage, or the illegality of the intended insurance.   But what is nearer to the present case, if the agent having difficulty in procuring insurance, employ a broker, who refuses to give up the policy, receives the money from the underwriters, and becomes insolvent, the agent is not liable, if the broker had been of good standing ; and the agent was not bound to bring an action for the detention of the policy.   *Paley*, 22.

The counsel also compared this to the case of notice on bills or notes, which must be given in almost all cases, or the person omitting to give it must bear the loss.   The answer is, that is a peculiar case, depending on general principles, and more on positive decisions in some cases, and does not apply even to a surety or guarantor, except one whose name is on mercantile paper.  See *Gibbs* v. *Cannon*, 9 *Serg. & Rawle*, 198, and cases there cited.

The very principle of this case, was decided by this court in *Hammon et al.* v. *Cottle*, 6 *Serg. & Rawle*, 290.   There the defendant lodged the plaintiffs' money with *P.* and informed them of it ; and it does not appear he ever after took any other step in the matter.   The plaintiffs drew for the money on *P.* who lived in *Paris,* where the agent was.   The bills were not honoured.   Nothing was done by the agent to get the money from *P.,* and yet he was not held liable, because the total insolvency of *P.* was found to be such, that any attempt to obtain compensation from him would have been fruitless.

The same principle runs through all our cases.   The guarantor is not liable unless the money could not be obtained from the principal ; but if the principal was totally insolvent, you can recover from the guarantor without having sued the principal, or given notice of his insolvency, *Gibbs* v. *Cannon*, 9 *Serg. & Rawle*, 198 ; for the omitting to sue or give notice, was no injury to the guarantor.

If the surety in a bond request the obligee to sue the principal, or

he (the surety) will be no longer liable, and the principal is not sued, the surety will generally be discharged, but if the obligee can show, that a suit against the principal at the time of notice would have been wholly unavailing, the surety remains liable. *Gardner's Admrs.* v. *Ferree,* 15 *Serg. & Rawle,* 30. I know of no case, except that of giving notice to a person whose name is on mercantile paper, in which one man is liable to another for a mere omission to do an act, when that act would have produced no benefit to the party complaining ; and whether it would have produced any benefit, must always depend on the circumstances of the case, and so be a matter for the jury. I am therefore of opinion there is no error in the decision of the District Court.

Judgment reversed and a *venire facias de novo* awarded.