## BROWN v. ARROTT.

January 30, 1836.

*Rule to show cause why a new trial should not be granted.*

A factor is bound to keep his principal informed of all material occurrences in the agency.

Where the conduct of the agent is such as to justify the principal in concluding that there is nothing at risk, and to warrant him in carrying on his business, and in making his calculation for the government of his affairs upon the faith of the safety of the matters under the agent's charge, the agent becomes an insurer to the principal for the whole amount.

THIS was an action of *assumpsit.* In 1821 the defendant was

I.—s

[Brown v. Arrott.]

in Scotland, and had some conversation with the plaintiff, which resulted in establishing the relation of principal and factor between them.   On the 2d of October 1821, when defendant had returned to Philadelphia, a written correspondence commenced by a letter from the plaintiff, dated at Dundee, enclosing an invoice of a shipment of dry goods by the ship Tuscarora, and giving some general instructions.   The correspondence was continued, and further shipments made.   Some sales were effected, and bills of exchange remitted to Scotland.   On the 27th of March 1822, the plaintiff wrote to the defendant as follows:

" If any of my goods are unsaleable with you, you may send a few bales to Baltimore or any of the neighbouring cities, if you think it advisable, taking care to put them in safe hands."

Under this authority, the defendant, on the 24th of September 1822, sent, on consignment, to James Young, at Boston, ten bales of linen goods belonging to the plaintiff.

In July 1823, Young stopped payment, having paid over none of the proceeds of the sales of the goods thus consigned to him.

The correspondence between the defendant and Young, was given in evidence.

The defendant wrote no letter whatever to the plaintiff, from the time of the consignment to Young, until the 7th of May 1824, nine months after Young's insolvency was known to defendant, except a letter of introduction of his nephew, David Arrott, in the summer of 1823, but which gave no information upon this subject.   On the 7th of May 1824, the defendant, by letter, informed the plaintiff of the difficulties in regard to the Boston consignment.   On the 21st of June 1824, the plaintiff, acknowledging the receipt of the letter of the 7th of May 1824, stated that he held the defendant responsible for the debt made in Boston.   The defendant gave in evidence the deposition of David Arrott, taken on the 3d of October 1828, as follows:

" In the month of July 1823, he sailed for Europe from Philadelphia.   For six years previously, he had lived with defendant, as his clerk, and was intimately acquainted with his concerns.   He knew of several consignments to the defendant by the plaintiff, in the spring of 1822, and that defendant sent a part of said goods to Boston, and consigned them to James Young at that place for sale, the market being bad for the goods at Philadelphia.   He sent at the same time to Young some of the goods of the plaintiff, and some goods which

[Brown v. Arrott.]

had been consigned to the defendant by David Lumgair. Deponent further saith, that for a short time previous to his departure for Europe, as before stated, the defendant was constantly expecting to receive accounts of sales, and a remittance from James Young. On the day of deponent's departure, or the day before, defendant received an account of sales, but no remittance. That the defendant gave this deponent particular instructions to see the plaintiff, and to inform him of the state of his consignment particularly, and of the sales which had been made at Boston, and gave deponent a short letter of introduction to the plaintiff, and a recommendation to Mr Brown, of deponent's house, at New Orleans, which was just then established. That shortly after the deponent's arrival in England, he went to Scotland, and in August or September 1823, he visited the plaintiff, at Dundee, and made him particularly acquainted with the state of his consignment, and of the sales made at Boston. The plaintiff inquired of deponent what prices the goods brought at Boston, and the deponent informed him. A good deal of conversation took place between the plaintiff and the deponent, but the plaintiff made no complaint or objection to the defendant's having sent the goods to Boston for sale, nor to any other particular of the defendant's conduct in the management of the business. That the deponent shortly after went to England, and whilst there, he received a letter from the plaintiff inquiring of him, if he had heard from his uncle, the defendant, which letter the deponent answered, and in that letter, or verbally in a visit which he shortly afterwards made to Scotland again, he informed the plaintiff that he feared something had happened at Boston, as he heard incidentally, from a friend at New York, that his uncle had passed hastily through that place, on his way to Boston.

" *Cross-examined.* The goods were sent to Boston in 1822. Mr Arrott received no regular account of sales until the sales were about to be closed. Deponent thinks he was advised of sales, as they were made, by letter, but no regular account current was forwarded until the close. When the deponent was at Dundee, he had no copy of account of sales from Young, and, of course, showed none to plaintiff. Deponent cannot say how many packages of goods had been sent, or how many he informed plaintiff had been sent. Deponent has not the letter from plaintiff to him. It is now in New Orleans, if in existence. Deponent sailed for Europe on the 20th of July 1823. About the time deponent went to Europe, he had

[Brown v. Arrott.]

established himself in business, and had left the defendant's counting-house."

There was much evidence given by the defendant to prove, that immediately upon his hearing of Young's failure, he had taken energetic, vigorous and prudent measures to secure the debt, but without success.

The view taken by the court of the case, renders a further reference to this part of the testimony unnecessay, except so far as to state, that in 1826, long after plaintiff had given notice to defendant of his holding defendant responsible for this debt, Young's friends in Boston offered to the defendant, in full satisfaction of the whole debt of 1887 dollars 70 cents, the sum of 600 dollars, which, for want of authority so to compromise, the defendant declined.

The facts in relation to a loss sustained on sales made by the defendant to John Folwell, as well as all additional matters essential to a ready comprehension of the important parts of the cause, are sufficiently given in the opinion of the court. The verdict was for the defendant, and the plaintiff moved for a new trial.

The rule was argued by *Randall,* for the plaintiff, in support of a a new trial. He cited: Harvey *v.* Turner, 4 *Rawle* 231 ; 1 *Cowen* 661 ; 3 *Johnson's Cases* 36 ; 1 *Livermore on Agency* 368, 390 ; 4 *Wash. C. C. Rep.* 551 ; 3 *Cranch* 415 ; 1 *Gall.* 360; *Paley on Agency* 37 ; 2 *Camp.* 546 ; 3 *Camp.* 291 ; 1 *Wash. C. C. Rep.* 394, 445 ; 1 *Camp.* 411 ; 3 *Wash. C. C. Rep.* 151.

*Cadwalader* and *Chauncey, contra,* who cited: 14 *Serg. & Rawle* 30 ; 12 *Johns. Rep.* 300, 306 ; 3 *Cowen* 283, 284 ; 2 *Keble* 781 ; 7 *Bing.* 101 ; 20 *Eng. C. L. Rep.* 62, 63 ; 3 *B. & Adolp.* 767 ; 23 *Eng. C. L. Rep.* 182 ; 2 *Kent's Comm.* 297 ; 2 *Russell* 385 ; 3 *Cond. Chan. Rep.* 164 ; *Willes's Rep.* 400 ; 2 *Dall.* 60 ; 3 *Maule & Selw.* 575 ; 1 *Wash. C. C. Rep.* 445, 394 ; 6 *Cowen* 181 ; 6 *Serg. & Rawle* 290 ; 3 *Buls.* 95 ; 3 *Term Rep.* 56, 64 ; 5 *M. & S.* 63 ; 10 *Eng. C. L. Rep.* 145 ; 15 *Serg. & Rawle* 139, 140 ; Mechanics Bank *v.* Earp, 4 *Rawle* 384, 393 ; 15 *Serg. & Rawle* 29 ; 1 *Rawle* 130 ; *Paley on Agency* 38, 39 ; 1 *Payne's Rep.* 285 ; 2 *Molloy* 328, *b.* 3, *ch.* 8, *sect.* 4.

The opinion of the Court was delivered by

Pettit, *President.*—This was an action of *assumpsit,* tried in May 1830, before the then President of this court, when there was a ver-

[Brown v. Arrott.]

dict for the defendant with a certificate that there was due to him
from the plaintiff, the sum of 5 dollars and 6 cents. The plaintiff
obtained a rule to show cause why a new trial should not be granted.
The reasons filed contained numerous specifications of mistake in
the finding of the jury, and of error in the charge of the court, both
as to the law and the evidence. After an unusual delay, growing
out of circumstances which the counsel supposed they could not
control, the rule was recently argued at great length, and with
much ability.

The plaintiff, a merchant of Dundee, in Scotland, shipped certain
of his goods to the defendant, a merchant at Philadelphia, to be sold
on the plaintiff's account. Sales were effected to an amount exceed-
ing 13,000 dollars. On the 31st of May 1824, the defendant trans-
mitted to the plaintiff an account of sales, and an account current,
in which he claimed a credit for sales made at Boston, by James
Young, amounting to 1887 dollars 70 cents, and for sales made to
John Folwell at Philadelphia, amounting to 283 dollars 50 cents;
the said Young and the said Folwell having proved insolvent. From
these accounts it appeared also that eighty pieces of linen goods
were still unsold. The defendant having transmitted sundry bills
of exchange to plaintiff, the balance on the account current was
578 dollars 95 cents, in favour of the defendant. The plaintiff how-
ever denied, at the trial, the right of the defendant to a credit for the
debts of Young and Folwell, asserting that the defendant had made
them his own. These two items, with certain charges depending
upon them or one of them, and an interest account exhibiting a
balance of 1113 dollars 74 cents in the plaintiff's favour, and also
depending in a great measure upon the same items, formed a large
portion of the groundwork of the present controversy. The plain-
tiff also asserted the right to charge the defendant for the eighty
pieces of goods, as of the said 31st of May 1824, when he alleged
they were worth 1176 dollars 10 cents; whereas the defendant as-
serted his right to account only for the actual sales subsequently
made of the eighty pieces, the net amount of which was 739 dollars
10 cents. This formed the remaining ground of dispute. After
giving the defendant credit for the balance of the account current of
578 dollars 95 cents, and for some charges on Young's sales, and for
incidental expenses, the plaintiff claimed, at the trial, the sum of 3838
dollars 55 cents. The defendant, denying all the items of the plain-
tiff's demand, claimed a credit for the balance of the account current

[Brown v. Arrott.]

of 578 dollars 95 cents, and for counsel fees and certain incidental expenses 165 dollars 75 cents, equal to 744 dollars 70 cents; and then charging himself with the net sales actually made of the eighty pieces not included in the account of May 1824, 739 dollars 10 cents, claimed at the trial a balance in his favour of 5 dollars 60 cents.

The jury seem to have adopted the defendant's views, for though the certificate in his favour was for 5 dollars 6 cents, the difference was probably the consequence of a mere clerical error.

As the evidence is all in writing, and is voluminous; and as the substance of the judge's charge, as placed before us, is also in writing, it is thought that it would be tedious, and by no means necessary, to attempt a recapitulation at this time. After a patient hearing of the argument, and an examination, not only careful, but laborious, of the testimony, it is the decided opinion of the court that a new trial should be awarded.

Referring to the *paper book*, for the character of the instructions given by the plaintiff, for the correspondence between the parties, and for all the facts of the case, the grounds of this opinion will be understood, it is believed, with sufficient clearness for all the purposes of another trial, from the following remarks.

1. Admitting that the defendant did not exceed the plaintiff's instructions of the 22d of May 1822, as to the *propriety* of *sending* a few bales of goods to Boston, or as to the *quantity* actually sent, or as to the *safety*, at the moment, of the hands in which they were placed; there was, nevertheless, in our opinion, a plain mistake on the part of the jury in assuming, as the verdict shows they did, under the charge of the court, that David Arrott, the nephew and clerk of the defendant, acting under his direction, communicated on his arrival in Scotland in August or September 1823, to the plaintiff, full notice of the transactions with Young at Boston; and in regarding the plaintiff to have sanctioned the defendant's management of the business, because he then uttered no complaint, and offered no objection.

It is manifest that the circumstances by which the defendant's suspicions, in reference to Young, were excited before David Arrott left Philadelphia, in the packet of the 20th of July 1823, and which induced the defendant to write to and draw upon Young, as he did on the 22d of July 1823, were not communicated by David Arrott at all; and from what appears to have been actually said by David Arrott, and from his subsequent letter to the plaintiff, written on a

[Brown v. Arrott.]

second visit to Europe, stating that he feared something had happened in Boston, as he heard incidentally from a friend at New York that his uncle had passed hastily through that place on his way to Boston, it may be assumed that he was not himself aware of those circumstances. The defendant was certainly entitled to information in relation to them, as well as to the other facts, before he could be held bound by any acquiescence, either express or implied. All that can be inferred from David Arrott's deposition is, that upon the verbal and incomplete exhibition of matters not calculated to awaken the slightest suspicion, the plaintiff was silent upon the subject of the defendant's conduct. It is not to be taken for granted that his course would have been the same if the communication had been a full one.

Beside the information furnished by David Arrott, no notice whatever of the consignment to Boston was given to the plaintiff, until the spring of 1824, nine months after the debt was ascertained to be bad. It is remarkable, that from the 19th of August 1822, about a month before the consignment to Young, until the 7th of May 1824, no letter whatever was written by defendant to plaintiff, except the mere note of introduction taken by David Arrott, in the summer of 1823.

As soon as the plaintiff received the defendant's letter of the 7th of May 1824, informing him of the difficulties in which the Boston consignment was involved, he replied by letter of the 21st of June 1824, stating that he held the defendant responsible for the debt made in Boston, alleging as one of the grounds of defendant's liability, the omission by the defendant to advise the plaintiff of the bad debt till long after it had happened.

A factor is bound to keep his principal informed of all material occurrences in the agency. A strict adherence to this rule is necessary, in many cases, to insure a faithful performance of the trust. Where the conduct of the agent is such as to justify the principal in concluding that there is nothing at risk, and to warrant him in carrying on his business, and in making his calculation for the government of his affairs upon the faith of the safety of the matters under the agent's charge, the agent becomes an insurer for the whole amount. This doctrine is asserted and explained in the case of Harvey v. Turner, 4 *Rawle* 223. In the present case, the plaintiff never was furnished with the materials for forming an opinion relating to, or for exercising a control over, the consignment to Young. He had, therefore, a right to repose upon the security which the

[Brown v. Arrott.]

responsibility of the defendant afforded. Indeed it seems difficult to suggest any rational mode of accounting for the silence of the defendant, but on the supposition that he had assumed the responsibility on himself.

Harvey *v.* Turner was not decided at the time of the trial of this cause. It had been tried before the same learned judge, and it appears from his charge, given in the report of that case, that he understood that the principle of the decisions of the supreme court required the jury to determine what amount of damage, if any, a principal actually sustained from want of notice from his agent. He was under the same impression of the views of the supreme court, when delivering his charge upon this occasion. In awarding a *venire facias de novo* in Harvey *v.* Turner, the supreme court recognised another, and a more arbitrary rule for a large class of cases. It is the opinion of this court that the case now under examination is one of that class.

This view of the subject renders it unnecessary to consider the steps taken by the defendant to recover the money after Young had become insolvent, in 1823.

But even if the measure of damage stated by the judge was the true one, it would be a plain mistake, we think, to say that the plaintiff sustained no actual damage. Had he been kept duly advised of the progress of the business, he might, and probably would have inquired as to Young's safety of the British houses with whom it appears that Young had been connected, in the relation of a factor; and he might, and probably would have been put on his guard, in time to prevent the whole or part of the loss, by learning in Scotland, what the defendant did not at the time know in Philadelphia, that the agency for a great Glasgow house, which had contributed much to give Young credit and importance, had terminated by the failure of that house. Nor is this suggestion answered by the remark that the plaintiff does not appear to have made such inquiry after the interview with David Arrott. It could hardly then have been deemed necessary. The sales were made at Boston, and the accounts were furnished by Young to defendant, and the plaintiff had reason to presume his interests in the matter to be secure. Independently of this consideration, he might, and probably would have secured the amount of the first sales made by Young, the credit on which expired early in 1823; or if that amount was not made available, he might, and probably would have taken measures to secure the goods remaining unsold in Young's hands, about the 1st of March 1823. Again,

[Brown v. Arrott.]

it is in evidence that there was a period in 1826, when the defendant could have obtained 600 dollars by releasing Young. Now if the plaintiff had been previously advised in such a manner as to throw the risk upon him, he might, and probably would have taken measures, by giving proper instructions and authority to the defendant or some other person, to realize that sum, even if nothing had been previously obtained.

In either view of this part of the case, therefore, it would be incumbent on the court to grant a new trial.

2. The sale to Folwell was made in June 1822, at six months. The amount was remitted to the plaintiff before it became due, and the defendant omitted to give the plaintiff notice of Folwell's insolvency till a recharge was made in an account current furnished in 1824. This part of the cause is not only within the spirit, but within the very facts of the case of Harvey v. Turner, 4 *Rawle* 223, and the defendant consequently made himself responsible for the whole amount. It is useless, therefore, to consider the point growing out of the fact, that the amount of this sale was included in a note taken by defendant from Folwell, comprehending the amount of other sales made to Folwell.

Were this the only error in the verdict, it might be important to ascertain whether this part of the plaintiff's claim is embraced in the declaration filed ; and whether, if not so embraced, the court, looking to the mode in which the cause was tried, could relieve the plaintiff from the difficulty. The plaintiff being at liberty, however, to exercise his own judgment, as to the expediency of filing an additional count, as the matter now stands, the court need not investigate the question.

The views now presented, in regard to the debts of Young and Folwell would obviously affect many of the charges allowed to the defendant, as dependent upon them, or more particularly upon the debt of Young, and would also require a material alteration in the interest account.

As to the eighty pieces of goods, there is nothing before the court upon which it can be asserted that there was any error in the charge or the verdict.

Rule absolute.