M'Neilly
v.
Richardson.

---

## M'NEILLY *against* RICHARDSON.

ASSUMPSIT, for money had and received to the plaintiff's use, tried before WOODWORTH, J. at the New York sittings, the 23d April, 1822, when a verdict was taken for the plaintiff, for $2794 84, subject to the opinion of the Court on the following case:

The plaintiff, resident in Ireland, sent to the defendant, a resident in the city of New York, a bill of exchange drawn by Cressy & Dawson, of Lawrence Town, in Ireland, on Abraham Bell, of the city of New York, merchant, in favor of the defendant, dated the 19th day of March, 1818, for 2210 dollars payable at 60 days' sight. The bill

*The plaintiff, resident in Ireland, drew a bill of exchange in favor of the defendant, resident in New York, for money, to be employed in building a vessel, and prosecuting a particular adventure, pursuant to a previous agreement. The defendant received the*

was accepted May 27th, 1818; and the money was paid to him upon it, July 29th, 1818. The defendant built the vessel, but employed her in a different adventure from the one agreed on. On the 22d June, 1818, he petitioned for his discharge under the act for giving relief in cases of insolvency, (1 R. L. 460;) which was granted, his property being assigned, &c., on the 12th August, 1818; *held,* that the money was recoverable as money had and received to the plaintiff's use; and that the debt (not accruing till after the defendant petitioned,) was not affected by the discharge.

Where one advances money to another, to be employed in a particular manner, and he appropriates it to a different object, it may be recovered back as money had and received to the use of him who advances it.

A discharge under the act for giving relief in cases of insolvency, does not affect debts which are contracted after the time of presenting the petition.

Nor will the discharge affect creditors residing out of the United States, unless the 8th section of the act be pursued.

was accepted on the 27th day of May, 1818; and paid to the defendant on the 29th day of July, 1818. The amount of the bill was received by the defendant *on account of the plaintiff.*

The counsel for the defendant then produced the dis- charge of the defendant under the insolvent act of this state, entitled "an act for giving relief in cases of insol- vency;" and relied upon that discharge in bar of the plain- tiff's action. The discharge was dated the 12th day of August, 1818.

The counsel for the plaintiff then produced the petition of the defendant, with the accompanying documents, under the act, from which it appeared that the petition was pre- sented to the Recorder of the city of New York on the 22d day of June, 1818; that the creditors were required to show cause on the 12th of August, 1818; and, on that day, the defendant executed an assignment of his estate, and ob- tained the discharge. It farther appeared, that in the ac- count of the creditors of the defendant, the plaintiff was not represented as a creditor, nor was the bill of exchange included in the inventory of the defendant's estate.

The Judge being of opinion that the discharge was not a bar to the plaintiff's right to recover, the counsel for the defendant called,

Hugh Hill, who testified that he was well acquainted with the parties; that he saw the plaintiff in Belfast in 1817 and 1818; that he had a conversation with him rela- tive to the business in which the witness and the defen- dant and the plaintiff and plaintiff's brother were con- cerned; that the plaintiff admitted the agreement between them to be, that the defendant was to build a vessel, load it with tobacco and send it to Ireland on their joint ac- count; that the bill was remitted on account of that con- cern; that the witness also advanced 2000 dollars on the account of the concern; that he did not consider that either himself or the plaintiff was to be concerned in the vessel, if it was not loaded with tobacco and sent to Ire- land; that the defendant had admitted to the witness that instead of sending the vessel to Ireland with a cargo of tobacco, he loaded her with a different cargo and sent

her to Havana; that the defendant has never rendered any account to the witness as part owner of the vessel or cargo; that the witness had seen the plaintiff in Ireland after the vessel was finished, and understood from him that it was called the Retrieve.

John White testified, that the defendant built the schooner Retrieve, which cost, as near as the witness could tell, about 10,000 dollars; that the witness was employed as superintendant; that she was sent on a voyage to Havana, which the witness had understood was a losing one.

The counsel for the defendant then offered to go into an examination of the accounts of the voyage; from which, as he stated, it would appear that the voyage had been a disastrous one, and that the defendant had lost a large sum of money.

The Judge rejected this evidence.

*G. Brinckerhoff*, for the plaintiff. The insolvent discharge was no bar. When the defendant petitioned, he held the bill as agent or factor of the plaintiff; and the money which he received under it was holden in the same way. This the law will intend, as it was his duty so to consider and hold it. That property holden as agent, factor or trustee, will not pass under a bankrupt assignment, is abundantly settled by the authorities. (10 John. Rep. 63, 289. 2 Vern. 638. Paley on Ag. 79. 3 M. & S. 576, per Ld. Ellenborough, C. J.)

The money being advanced to the defendant on account of a special adventure, and no part appropriated to that or any other object, he is accountable for money had and received. (5 T. R. 226, per Ld. Kenyon, C. J. 1 East, 554. 9 id. 12. Willes, 404.)

*S. Jones*, for the defendant. The bill was paid to the defendant on the 29th July. The avails then became a part of his own funds. The bill was no longer a chose in action. The assignment and discharge which took place in August, operated on all debts due from the defendant

before the assignment, and this among the rest. The plaintiff might have come in for his dividend. If the money received on the bill was kept distinct from the defendant's, as trust money, it lay with the plaintiff to show it.

But the money was appropriated by the defendant. So far as the building of the schooner was concerned, the contract was literally pursued. Nor does it appear but that changing the destination of the vessel was proper under the circumstances. War, or other cause for this, might have intervened. The change will be intended to have been proper, till the contrary be shown.

*Curia*, per WOODWORTH, J. The money was advanced by the plaintiff to be applied in a particular adventure. He never consented to a different appropriation. The defendant has, on his own risk, and on his own responsibility, undertaken a different voyage, and chosen a different cargo. With the profit or loss in this concern, the plaintiff had no connection. This is a sufficient reason for excluding evidence to prove the defendant's loss. The money not being applied according to the contract, the plaintiff was entitled to a return of it, as money had and received to his use. The defendant must be considered as holding the bill in trust for the plaintiff, to the day of payment. Until that time, he was not the plaintiff's debtor in any amount. A bill was resorted to by the plaintiff as the medium by which to make the remittance. The defendant, it seems, was to receive the money for a particular object, and would not be chargeable till the day of payment, unless he had made himself liable on the ground of negligence.

The question, then, is, whether the discharge was a bar. The petition was presented on the 22d of June, 1818. The plaintiff was not named as a creditor, nor the bill of exchange inserted in the inventory.

I think it very clear that the discharge is no bar to the plaintiff's action. The whole scope of the act, (1 R. L. 460,) has reference to creditors and debts due, or to become

due, when the petition is presented. The first section of the act gives the right of petitioning for a discharge, to the insolvent and his creditors who shall have debts owing to them. All subsequent proceedings are predicated on this fact. The existing state of things at the time of presenting the petition is the criterion. Persons who subsequently become creditors, are necessarily excluded from a participation of the insolvent's property, and are not affected by the discharge. It seems to me that a different construction would defeat the plain intent of the act. Suppose an insolvent, at the time of presenting his petition, was indebted 1000 dollars, for two-thirds of which sum the creditors become petitioners : subsequently to this, and before the assignment, the insolvent contracts debts to the amount of 1000 dollars more ; the doctrine contended for would, in that case, discharge the insolvent, when, in fact, less than one-third of the creditors, in amount, petitioned for the discharge. The intention of the act is to exonerate the debtor from debts then due ; and, consequently, subsequent creditors are not affected. Again : the insolvent is required to deliver an account of his creditors, and the moneys owing to them. This necessarily excludes subsequent creditors.

The 6th section declares that upon producing a certificate from the assignees, the officer shall discharge the insolvent from all *such debts* due at the time of the assignment, or contracted for before that time, though payable afterwards. The words " such debts," refer to those upon which the proceedings under the act are had. They alone are discharged.

The 19th section provides for a distribution of the insolvent's estate ; and directs that a just and equal distribution be made to creditors, *whose debts are discharged by the act ;* which seems to imply that there may be others who cannot participate in the distribution.

In the present case, the plaintiff did not reside in the United States. By the 8th section, it is expressly enacted, that debts due to creditors residing without the United States are not to be discharged, unless the foreign creditor petition,

UTICA,
Aug. 1825.

M'Neilly
v.
Richardson.

or receive a dividend, or two-thirds of all the insolvent's debts, including foreign debts, shall have been signed off. There has not been a compliance with these requisitions I am of opinion that the plaintiff is entitled to judgment.

Judgment for the plaintiff.