## ROGERS vs. BRADFORD.

1. TERRITORIAL COURTS — PRACTICE.  The supreme court of this Territory is a court created by legislative authority, and in adjudicating cases arising under the laws of the Territory must conform in its practice and course of decision to the laws of the Territory, and it is not bound by or subject to the restriction contained in the seventh article of amendments to the constitution of the United States.

2. NEW TRIAL — REVIEW OF FACTS.  A review in this court of a decision of the district court refusing a new trial, is not a review of any matter once tried and determined by a jury, but an examination to determine whether the district court, in deciding upon the motion, exercised a sound legal discretion in the premises.

3. SAME.  A decision of the district court, upon a motion for a new trial, is subject to review, upon writ of error, when a sound legal discretion has not been exercised according to the rules of law applicable to such motions.

4. WAIVER — EXCEPTIONS.  It seems that a party by making a motion for a new trial, does not waive the benefit of a bill of exceptions already settled, unless the motion and the bill both embraced the same matters; and there is no objection to there being two or more bills of exceptions in a cause, and a motion for a new trial afterward, if they do not embrace the same matter.

5. CONVERSION OF TRUST FUNDS.  Where one receives money from another for a particular purpose and converts it to his own use, or uses it for a different purpose from that intended, or neglects or refuses to apply it to the purpose designated, it may be recovered back in an action for money had and received.

6. CONSTRUCTION OF WRITTEN INSTRUMENT.  It is a question of law for the court to determine what facts are established by a written instrument given in evidence, and what obligations are imposed by it.

7. PRINCIPAL AND AGENT.  An agent is bound to keep his principal informed of all material occurrences in regard to the subject of his agency, and if he fails to do so, he will be liable to his principal for such violation and neglect of duty.

8. R. received of B. $1,000, "to invest for him in town lots or land, according to the best of his judgment, and when invested, to inform B. of it." R. invested the money, with $1,000 of his, in land, taking the deed in *his own name*, and informed B. of the investment, but falsely stated that the deed had been taken in the name of both. It was claimed by R. that he afterward informed B. how the title had been taken, and that B. assented to the transaction, and agreed that he should hold the title for B.'s benefit; but R. afterward mortgaged the land to secure his own debt. In an action brought by B. against R., to recover back the $1,000 and interest, *held :*

Rogers vs. Bradford.

1. That the act of R. in purchasing the land and taking the entire title in his own name, was not a proper execution of the trust, nor a legitimate use of the fund intrusted to him.

2. That if B., with a full knowledge or the means of knowledge of the transaction, agreed that the purchase should stand, and that R. should hold the title for their joint benefit, he would be bound by the appropriation made of the fund.

3. The misrepresentation by R. to B., his principal, of an important and material fact in relation to the transaction, was a fraud for which B. might have rescinded the agreement between them and recovered back his money in an action for money had and received.

4. If B. confirmed the purchase, with a full knowledge of the facts, agreeing that R. should hold the title to the land for their joint benefit, and R. *afterward* mortgaged or conveyed the land to his own use, without the knowledge or consent of B., such act the law would regard as a fraud and a misapplication of the funds from the beginning, and the entire transaction, be regarded as an entire breach of faith. B. would be permitted to recover his money in an action for money had and received.

5. If at the trial, evidence had been given to show that R. had mortgaged the land for his own debt, all evidence offered by him to show a confirmation of his acts by B., prior to the giving of the mortgage, should have been excluded ; and a motion for a new trial, made by R., on the ground of newly discovered evidence, to prove that B. confirmed his acts in the premises prior to the date of such mortgage was properly denied.

ERROR to the District Court for *Milwaukee* County.

This was an action of assumpsit brought by *Bradford* against *Rogers*, and the declaration contained the common counts, to which the defendant pleaded the general issue. At the trial the plaintiff gave in evidence the following receipt :

"Received, Milwaukee, 15th August, 1836, of *Worling Bradford*, one thousand dollars cash, to invest for him in town lots or lands, according to the best of my judgment, and when invested I am to inform him of the same. $1,000.

(Signed)          JAMES H. ROGERS."

It was proven for the plaintiff that defendant, the winter before trial, asked H. Williams if he knew a man who was at the Milwaukee House when he kept it, one *Bradford ;* said he had $1,000 from him to invest in land,

and that *Bradford* could have part of 70 or 80 acres up the river.

That defendant said to B. H. Edgerton that he had received the money from *Bradford* to invest, and was ready to convey the land, and always had been.

That the receipt was presented to defendant by A. Finch, in whose and Mr. Wells' hands it had been left for collection, and payment demanded in the spring of 1842, about six months before suit brought, when defendant said he could not pay it; that the money was received to invest in real estate; that he had invested it for *Bradford*; that he did not take the deed in the name of *Bradford*; that he bought the land, putting in $1,000 of his own money with *Bradford's*, and took the deed in his own name; 80 acres up the Milwaukee river, near the mill.

On the part of the defendant it was proven that plaintiff came to Milwaukee in the summer of 1836, and in the fall of that year, after his return to Perrysburg, Ohio, where he lived, he said that he had seen defendant at Milwaukee, and left $1,000 with him to invest in town lots or lands, and wanted to send some one out to look to the investment; witness (John Weston) was then about starting, and plaintiff's brother Ira talked of coming. Plaintiff stated that he had received a letter from defendant stating that he had bought lands for him, and plaintiff requested Weston and his brother to look up the lands when they came out; wanted Weston to write to him about it, and said Weston might go on the land and live on it; Weston and Ira B. came out in fall of 1836, and Weston saw defendant upon his arrival, who told him where he had laid out plaintiff's money; Weston was much at defendant's mill on Milwaukee river and worked for him; when at the mill, in 1836, defendant pointed across the river and said, "there lies *Bradford's* money," and said that B. and himself had 80 acres there; told Weston to keep an account of the logs cut upon the tract, that he might settle with plaintiff; Ira B., after he came out, cut logs on the land; Weston told Ira,

in winters of 1836 and 1837, to write to plaintiff that defendant was cutting too many logs on the land; Weston kept an account of logs cut; plaintiff came out to the Territory in summer of 1838, and was at Weston's house two miles up the river and stayed nine days; plaintiff wanted to see the land; Weston told him all defendant had done about it; showed him the land; they walked over it and spent some time looking at it; plaintiff appeared satisfied and said so, and was only dissatisfied with defendant for cutting so many logs; Weston told plaintiff he had kept an account of the logs; nothing was said about the title; Weston and defendant had cut about four hundred logs; Ira B. took an account of the logs when he returned east in 1837; the land was cheap enough at $2,000 in 1836.

Defendant produced a deed duly executed, dated 1st September, 1836, from James Wood and wife, to defendant, for $83\frac{77}{100}$ acres of land, being the undivided half of lot 5, N. W. ¼, sec. 9, T. 7, R. 22, and recorded the same day, proved that the land was entered by Wood, and lay opposite to defendant's saw-mill.

H. Crocker testified that about 5th August, 1841, he, the attorney for defendant, tendered to A. Finch, attorney for plaintiff, defendant's deed to plaintiff for one-half the land. Finch did not receive the deed, but said, "I presume it is all right; I will write to *Bradford*."

Plaintiff produced two letters from defendant, one dated 22d September, 1836, in which he said, "I have laid out your money in the purchase of eighty-four acres of land near town, for which I gave $2,000 in cash, and have a good deed for the same in my name and yours. The land I have been offered $35 per acre for, but I think I shall hold on to it for the present, as I am confident it will fetch $50 in the spring. I shall not sell until I hear from you, or you come on in the spring."

The other was dated 6th November, 1836, in which defendant said, "I wrote you on the receipt of your letter, informing you that I had invested your money in

eighty-seven acres of land, with $1,000 of my own, which has advanced considerable. I can sell it for $35 per acre."

The plaintiff gave in evidence a mortgage dated Sept. 25, 1839, from defendant to one Tomlinson, including this land with other tracts to secure the payment of $2,000.

The court charged the jury:

"By the receipt in evidence the defendant promised to invest the $1,000 in lots or lands for the plaintiff. By the receipt, *Rogers* should have purchased the land in the name of *Bradford*, and taken a deed in the name of *Bradford*; taking a deed in his own name alone is not a proper execution of the promise, and is not an application of the fund.

But it was competent to *Bradford* to confirm the act of *Rogers*, and to agree that the purchase they made would stand in *Rogers'* name for his use; if the plaintiff did so with a full knowledge of the transaction and of his own rights, then the promise was executed, and the plaintiff will be bound by it.

To bind the plaintiff on the score of acquiescence, it must appear satisfactorily to the jury, that the plaintiff had a full knowledge of, or the means of knowing his rights. If the application of the funds has been thus acquiesced in by *Bradford*, or confirmed by him, then the fund has been disposed of, and has been invested. The giving of a mortgage afterward by *Rogers* upon this land to a third person, will not entitle the plaintiff to recover in this action for money had and received.

The defendant excepted to that portion of the charge by which the jury were instructed, that the taking the title to the land purchased in the name of the defendant alone, was not a proper execution of the power, and was not an application of the funds received from the plaintiff. Verdict for the plaintiff for $1,482. A bill of exceptions was signed stating the foregoing facts. The defendant afterward moved for a new trial, on the ground that the verdict was contrary to law and the evidence;

that the charge of the court was erroneous in point of law, and of surprise at the contents of his letter of September 26, 1836, and of newly discovered evidence. In support of this motion the affidavit of the defendant was read, stating in substance, that at the time of the trial he was confined to his house by sickness and unable to attend court; that he had used due diligence to prepare for trial and to obtain evidence to show the acquiescence of the plaintiff in his acts as his agent, and in taking the title to the land in his own name, which he averred to be true, and stated in detail the nature and kind of diligence used; that he relied mainly upon the two letters read in evidence at the trial which the plaintiff's counsel had stipulated to produce, but he had seen only one of them since they were written; that he was entirely surprised at learning that one of said letters stated that he had taken a good deed in his name and the plaintiff's for the land, and stated that these words were written through inadvertence or great haste, and that if the plaintiff received a false impression from this letter he was soon undeceived, and had defendant been aware of the language in said letter he would have filed a bill of discovery to establish his defense; that after the trial he discovered that his brother Jacob M. Rogers, who lived at almost fifty-five miles from Milwaukee, had had frequent conversations with the plaintiff on the subject of said investment and the land in question, and that he would be able to prove by him the several matters stated in the affidavit of said Jacob M. Rogers on file in the case, and that he was ignorant of the fact that his brother Jacob M. had had any conversations with the plaintiff in regard to the transaction in question, until after the trial. The affidavit of Jacob M. Rogers states in substance, that in August, 1836, the plaintiff staid one night at his house and told him he had left $1,000 with *James H. Rogers* to lay out for him in land; that in July, 1838, the plaintiff came to Milwaukee and staid one or two weeks; that he came to deponent's house, and he had a talk with

him about the investment in question, and the plaintiff said he was going to see the land; that he returned, stopped at deponent's house and conversed with him fully and freely about it; that just before plaintiff left Milwaukee he passed a night at deponent's house, and they had much conversation about the matter, that plaintiff expressed himself as satisfied with the investment, and thought it was a good one, and he said *James H. Rogers*, the defendant, had the deed in his own name and had offered to give him, *Bradford*, a deed of it, but he thought he would not take it then, but preferred that *Rogers* should have it in his own name, and dispose of it to the best advantage, as he *Rogers* thought best; and that much more was said to the same effect, and that *Bradford* talked over the matter several times with deponent, and that deponent never told *James H. Rogers* of these conversations, nor had any conversation with him on the subject of the suit with *Bradford*, and that he did not know or think that *James H. Rogers* knew any thing about these declarations until after the trial of the cause, when he informed him of these facts.

The district court overruled the motion for a new trial and rendered judgment on the verdict in favor of the plaintiff. The defendant excepted to the ruling and procured another bill of exceptions to be settled and signed, embracing these facts.

*Peter Yates* and *John H. Tweedy*, for plaintiff in error:

1. The district court erred in charging the jury that there was any evidence to support the common counts, because an action for money had and received, could not be maintained, and the action should have been on the special agreement, which was still subsisting, open and not rescinded. 1 Car. and P. 18; Doug. 23; 1 Term, 136; 7 id. 177; 5 East, 449; 7 Johns. 132; 12 id. 274; 13 id. 94; 14 id. 326; 18 id. 456; 19 id. 205; 5 Mass. 391; 1 Tyler, 182; 2 Munf. 344; 1 Bibb, 395; 5 Ohio, 380.

2. *Bradford* had possession of the land by his brother

and received accounts of the logs cut upon it. He did not attempt to rescind until six years after the investment, and availed himself of the chance of the rise in value of the land, and all the time treated the contract as still subsisting. A party having the right to rescind, must rescind wholly and in a reasonable time, and he affirms the contract by receiving any advantage under it, and where there has been a partial execution of the contract and a benefit derived under it, the contract cannot be rescinded so as to bring this action. Chitty on Cont. 311, 622, 633, 741 and notes ; Strange, 406.

3. The court erred in charging the jury that the land should have been purchased in *Bradford's* name and that his name should have been included in the deed, and that taking a deed in the name of *Rogers* alone was not a proper execution of the promise or a proper application of the fund.

The whole matter of the investment and the manner of making it were left to the discretion of *Rogers*. *Bradford* made him trustee of the fund, with full power and the widest latitude of discretion, and if *Rogers* used the money in the purchase of lands for the benefit of *Bradford*, in good faith and with ordinary discretion, the trust was so far executed and there was no misapplication of the fund, and it made no difference in what manner, or in whose name the title was taken, provided *Rogers* was ready and able to pass it on demand. *Rogers* held the naked title as his trustee until he called for it, as he would for his title papers. He was ready to deed it at all times ; he could have been compelled to make one, and if he had died or became insolvent, the land remained *Bradford's*, as against the creditors or heirs of *Rogers*, and if he had sold it he could follow the proceeds or sue for the conversion of the proceeds and damages. 2 Sugden on Vendors, 173–178 ; 2 Story's Eq. 443–445, 506 *et seq.;* 7 Mass. 36. It was competent for Rogers to completely fulfill his trust by conveying the title to *Bradford*. He

tendered a deed one year before suit and no objection was ever made to it.

4. The purchase as made, was acquiesced in and confirmed by *Bradford*. If a principal with knowledge of the facts, adopts or acquiesces in the acts of his agent, however unauthorized, he cannot afterward impeach them, though they were contrary to his instructions, and when he is informed of what has been done, he must dissent and give notice of it within a reasonable time, otherwise his assent will be presumed. 2 Kent's Com. 616 ; 12 Johns. 300 ; 1 Caines, 526 ; Story on Agency, 246, *et seq.*

*Bradford* did not dissent until six years after the investment and five years after examining the land, nor until one year after a deed is tendered to his attorney.

5. The court erred in refusing to grant a new trial. The testimony was discovered after the first trial ; it was not known and could not have been obtained on the former trial ; it was material to the issue, and went to the merits of the action, and was not cumulative. Graham on New Trials, 465–469, 491–493 ; 6 Pick. 114, 417 ; 4 Wend. 579 ; 6 Greenlf. 479 ; 10 Wend. 285 ; 24 Pick. 246 ; Doug, 797.

*W. P. Lynde* and *Levi Hubbell*, for defendant in error. 1. The decision of the court below upon the facts cannot be reviewed by the method adopted in this case. A fact once tried by a jury cannot be inquired into or reviewed except according to the course of the common law. Const. U. S., art. 7, Amend. ; 2 Sum. C. C. 19 ; 3 Peters, 433 ; 2 Binney, 89. Wisconsin Territory is a part of the federal government and is subject to its laws. The remedy in such case is by mandamus. 10 Wend. 225.

2. There are two bills of exceptions, and the defendant cannot prosecute his remedy against the verdict without abandoning his first bill of exceptions. 2 Tidd's Prac. 683, 913 ; 5 Mason, 173. And in case of a motion for a new trial the court cannot look into previous exceptions, but is confined to the questions arising on the motion.

3. The evidence fully sustains the verdict and shows

fraud and misapplication of the plaintiff's money. The defendant wrote to the plaintiff a false account as to the way the title was taken ; he cut the timber off the land and never accounted for it, and mortgaged it for his own debt, and he made no explanation of these matters.

4. The action is properly brought. If A pays money in advance on a special contract to B, it becomes B.'s money, and A must seek his remedy on the contract; but if A deposits money with his agent to be appropriated and used in a particular manner and it is used for an entirely different purpose, A can maintain an action for money had and received, and in every case where there is a trust or agency, and it is not fulfilled or the money is not applied to the purpose of the trust, the law raises an implied promise to repay it, and it may be recovered in this form of action. 4 Cowen, 610 ; 8 Bing. 14. And while the plaintiff might have resorted to a bill in equity for a conveyance of the land, yet he was not bound to do so, but could recover for money had and received. Ham. on Prin. and Agent, 375, and cases there cited ; 1 Harrington, 446.

DUNN, C. J. Error is prosecuted in this case to the judgment of the district court of Milwaukee county, at the last November term.

There are certain preliminary questions to be settled in this case, before we consider the grounds of error, presented by the exceptions taken at the trial. It is contended by defendant in error that this is a constitutional court, and by the provisions of the seventh article of the amendments to the constitution of the United States, can review matters once tried by a jury only according to the course of common law.

The supreme court of the Territory of Wisconsin, while adjudicating in cases arising under the laws of the Territory, is a legislative court, must conform its decisions to the laws of the Territory, and is not subject to the restriction referred to in the said seventh article of the amendments

to the constitution, as would be the case, were it deciding causes arising under the constitution and laws of the United States.   1 Peters, 546.

We understand however, that the examination in this court of an error alleged against the opinion of the district court in refusing to grant a new trial, is not a review of any matter once tried by a jury, but of the opinion of the court in the exercise of a sound legal discretion; a subject which had not in any wise been considered by the jury.

It is now well settled that this discretion must be a sound legal discretion, and is therefore the subject of error when exercised against the rules of law applicable to new trials.   The statutes of the Territory require this court to review errors on motions for new trial.   Revised Statutes, 196.

There are two bills of exception in this case, and it is insisted that the plaintiff in error cannot be permitted to rely upon the bill taken before the motion for a new trial was submitted ; that the motion waived the exceptions, because plaintiff in error could not rely upon both remedies at the same time.   There might be some reason for this position, if the motion embraced the same points excepted to in the bill ; without this, there is certainly nothing to sustain it.   In legal reason and practice, there can be no objection to two, three or more bills of exceptions, or a bill of exceptions and motion for new trial after, if they do not embrace the same matter.   The only case cited against entertaining a motion for a new trial, until a bill of exceptions is waived, is in 5 Mason, 173.   Judge STORY there stated it to be the practice of the circuit court of the United States for the first circuit, "not to entertain a motion for a new trial, unless the bill of exceptions is waived."   The reasons for this practice there assigned, plainly demonstrate, that it applied only in cases where the motion and bill of exceptions embrace the same matters.   Nothing is relied on to support the rule but the authority of practice.

A very different practice obtains in the courts of many of the States of this Union, and being of opinion that a party should have the advantage of his exceptions and, motion for new trial also, if they possess merit, we incline to the practice of allowing the exceptions and motion. However, conceding to the practice stated by Judge STORY all the merit which can be claimed for it, the point in the case at bar is not sustained by this practice. In this case the bill of exceptions was not waived, still the court considered the motion and overruled it upon other grounds, for aught that appears of record. The correctness of this practice, will not be here questioned, but we will take up the case as it is presented by the record.

It is assumed by plaintiff in error, that if it appear from the record, that the defendant in error (plaintiff below) has not presented to the district court such a case as would entitle him in law to recover, in the form of action chosen by him, then this court would reverse the judgment, although the objection was not taken by demurrer or otherwise in the district court. To this principle we assent, and will examine the objections to the plaintiff's right of recovery, in the form of action which he has adopted in this case. It is contended, that the receipt introduced on the trial of this cause by plaintiff (below) as evidence, in these words: "Rec. Milwaukie, 15th Aug., 1836, of *Worling Bradford*, one thousand dollars cash, to invest for him in town lots or lands, according to the best of my judgment, and when invested I am to inform him of the same. (Signed) JAMES H. ROGERS." — proves a special contract between the parties in relation to the $1,000; and that the plaintiff (below) cannot recover the same in assumpsit on the common counts.

The court does not understand the position as being within the principle assented to. This receipt is only matter of evidence and not the foundation of the action, it might have been introduced either by plaintiff or defendant to show the receipt of the money, and for what received, and is not a part of the record of the plaintiff's

case as contemplated within the principle. The production of such a special agreement, as evidence on the trial by either plaintiff or defendant (below) does not compel plaintiff to resort to his action on the special agreement, as the doctrine is well settled, that a misapplication of the fund under the agreement rescinds it, and entitles the plaintiff to recover in an action for money had and received ; and where plaintiff relies upon a misapplication of the fund to recover for money had and received, no other form of action could be adopted. Where one receives money for a particular purpose, and applies it to his own use, or to a different purpose, or refuses or neglects to apply it to the purpose designated, it may be recovered back in an action for money had and received. *Wales v. Witmore*, 3 Dal. 252 ; *M'Neally v. Richardson*, 4 Cow. 607 ; *Dunman v. Carpenter*, 3 Johns. 183 ; *Guthrie v. Hyatt*, 1 Har. 446.

Having disposed of these questions, we now come to the prominent grounds of error assigned in this case. The last branch of the first instruction of the district court to the jury is excepted to. The instruction is in these words : " By the receipt in evidence the defendant promised to invest the $1,000 in lots or lands for the plaintiff. By the receipt, *Rogers* should have purchased the land in the name of *Bradford*, and taken a deed including the name of *Bradford*. Taking a deed in his own name alone, is not a proper execution of the promise, and is not an application of the fund." It is a question of law for the court to decide, as to what facts are established by a written instrument permitted to be read as evidence on the trial of a cause, and what legal obligations are imposed on the party or parties thereto. They are not facts *in pais*, to be inquired of and settled by a jury, but legal results from a state of facts presented in a deed or instrument in writing, proven and established by the instrument, and no longer a subject of doubt or inquiry. The court may err in the legal deduction drawn, but not by instructing on the sub-

ject-matter. The inquiry arises, did the court err in the last branch of this charge to the jury? It is clear that the branch of the instruction which asserts the legal conclusion, "that the taking of a deed in his (defendant's) own name alone, is not a proper execution of the promise, and is not an application of the fund" was correctly given. The principles settled by the authorities last cited, and in Story's Law of Agency, 137 and 140, establish the correctness of this charge. And the defendant so considered it, because he introduced evidence, as appears from the record, tending to prove that plaintiff confirmed the application of the fund in this manner.

The district court properly instructed the jury that the plaintiff could confirm the act of defendant, and agree that the purchase made by him should stand in his, dedefendant's, name for the plaintiff's use. And if the plaintiff did so with a full knowledge of, or the means of knowing the transaction and his own rights in connection therewith, then the promise is executed, and the plaintiff bound by it.

The second exception is to the opinion and decision of the district court overruling the motion for a new trial, and error is assigned thereon. The reasons insisted on are:

1st. The verdict was contrary to law and the evidence in the case, and should have been for the defendant instead of the plaintiff.

2d. That the charge of the court to the jury on the law, as applied to the facts of the case, was erroneous, and influenced the jury to find a verdict for the plaintiff when it should have been for defendant.

3d. That the court erred in charging the jury, that the taking the deed by *Rogers,* the defendant, in his own name, was not a proper execution of the promise, and was not an application of the fund.

4th. Surprise of defendant.

5th. Newly discovered evidence.

In the consideration of the error assigned on the over-

ruling of this motion, is involved the merits, as well of the plaintiff's case made out at the trial as of the defense set up, and sought to be strengthened by the newly discovered evidence presented in the motion.

It is a well settled rule, that an agent is bound to keep his principal informed of all material occurrences in the agency ; if he fail to do so, it is negligence, and a palpable violation of duty for which the factor is clearly liable. This general principle required the defendant to inform the plaintiff how he had invested his money.   His receipt also obligated him to do it.   Therein he promised to invest the money for defendant in lands or town lots, and when invested, to inform plaintiff.   Instead of taking the deed in the name of the plaintiff, which he ought to have done, and which was necessary in making the investment for plaintiff, he took it in his own name, and advised or informed the plaintiff that he had taken the deed in his and plaintiff's name, which, by his own showing on the trial, was not true.   There was not only a violation of duty and breach of faith, but a willful misrepresentation of a most material and important fact.   The defendant in this case promised to transact a single piece of business, without discretion, except as to the value of the property purchased in reference to a good bargain, and he was bound to fulfill the promise to the letter.   *Harvey v. Turner*, 4 Rawle, 223, 229 ; *Toland v. Murray*, 18 Johns. 24 ; *Hubbard v. Elmer*, 7 Wend. 446 ; *Hampton v. Specknagle*, 9 Serg. and Rawle, 212 ; *Courceier v. Ritter*, 4 Wash. C. C. 549 ; *Kingston v. Wilson*, id. 310 ; *Jackson v. Baker*, id. 394 ; *White v. Skinner*, 13 Johns. 307 ; *Randal v. Van Vechten*, 19 id. 59 ; *Taft v. Brewster*, 9 id. 334 ; *Tippits v. Walker*, 4 Mass. 595 ; *French v. Reed*, 6 Binney, 308 ; *Walker v. Smith*, 4 Dal. 389.

It would have been difficult in this case to have made the defendant responsible to the plaintiff, if he had purchased for plaintiff, lands or lots not worth the purchase money given, or in other words, had made a bad bargain, because this was referred to the best judg-

ment of the defendant; and to make him liable it should appear that he exercised a perverse and willful judgment against reason, to the prejudice of his principal. He had no discretion as to the kind of property to be purchased, or as to the person for whom purchased; in these respects he was positively limited, and a departure from his obligation in either, made him immediately liable to plaintiff. The misrepresentation by defendant, of an important and material fact, to his principal, unexplained, was a fraud upon him, and at his election would rescind in *toto* the agreement between them, and entitle the principal to recover for money had and received. These principles are obvious, and were evidently admitted by defendant on the trial, for his testimony and evidence on the trial go to obviate their legal effect on him, by an attempt to prove that plaintiff, with a full knowledge of his rights, or the means of knowing, confirmed the acts of his agent, the defendant. The legal questions arising in this case seem to be conceded up to the evidence tending to prove confirmation by plaintiff, of the acts of the defendant. It is indisputable that plaintiff might have confirmed the acts of his agent, and agreed to derive benefit under these acts. This implies that plaintiff had knowledge of his rights or the means of knowing, and that the defendant assented, that the land conveyed to him by deed should be held by him for plaintiff's benefit, otherwise there would be no consideration for the confirmation, and the law will not presume that plaintiff confirmed these improper acts of his agent, without securing to himself the benefit originally intended both by plaintiff and defendant.

Now the court will assume this position, as sustained by reason, justice and law. If full proof were made of confirmation by plaintiff, with a knowledge of his rights, or the means of knowing of the acts of his agent, the defendant, agreeing that defendant should hold the land in his name for plaintiff's use, the defendant assenting, because the confirmation would be complete and perfect

only on such, or equivalent terms, and the defendant afterward conveyed the land for his own use and benefit, the law would declare this latter act of defendant a direct fraud against the agreement of confirmation, and additional evidence, most forcible in its character, of fraud on the plaintiff, and misapplication of the fund *ab initio;* the assent to the confirmation by defendant a mere pretext; and the subsequent conveyance by him a consummation of his improper and illegal conduct in the investment throughout.   The law, with this state of facts, would rescind · the agreement *in toto,* considering the whole transaction·as one act or breach of faith and misapplication of the fund, and permit the plaintiff to recover for money had and received.

The charge of the district court in answer to an abstract proposition, that the giving of the mortgage (if the plaintiff had previously consented to and confirmed the purchase) would not, of itself, enable the plaintiff to recover in this action for money had and received, was asked for by defendant (plaintiff in error), is not excepted to, and of course, not subject to revision here as error.   This court is of opinion, however (and so the district court must have considered on the motion for a new trial), that a mortgage is not only a lien for a debt, but is a transfer of the property itself as a security for the debt.   This must be admitted to be true in law, and it is equally true in equity, for in this respect equity follows the law.   The estate is considered as a trust, and according to the intention of the parties, as a qualified estate and security. When the debt is discharged there is a resulting trust for the mortgagor.   It is therefore, only in a loose and general sense that it is sometimes called a lien, and then only by way of contrast to an estate absolute and indefeasible.   *Conrad v. The Atlantic Insurance Company,* 1 Pet. 441 ; *Bronson v. Kinzie,* 1 How. 311.

If the mortgage by defendant to Tomlinson of this land (said to have been purchased partly for plaintiff's use), executed and delivered in 1839, after the supposed con-

firmation, had been introduced as evidence, before the defendant introduced any testimony tending to prove confirmation previously by plaintiff, we are of opinion that the district court should have excluded all testimony on that point, the after mortgage by defendant, being to our minds, conclusive against him. The plaintiff could not pursue the land in Tomlinson with his equity, unless he could show that Tomlinson had a full knowledge of his right before the delivery of the mortgage to him. So, at most, he had but a hypothetical equity.

In this view of the case, the surprise and newly discovered evidence, as set out in the affidavits accompanying the defendant's motion for a new trial, could avail nothing, and of course, afford no sufficient legal reason for granting a new trial. It is not necessary to consider here whether the newly discovered evidence or testimony is cumulative or not; or the objection to such testimony, that it is the testimony of a relative, proving the private acknowledgments of the plaintiff, and the various legal rules which influence a court to set aside a verdict and award a new trial, as this court is of opinion that there is neither error in the charge of the district court excepted to, nor in its decision and judgment overruling the motion for a new trial.

The judgment of the court below is affirmed, with interest thereon at the rate of seven per cent. per annum from the date of the judgment.